**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANCISCO MERINO and LEONEL AMIGON, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**MIKE & CATHY'S SONS, INC. d/b/a MIKE'S HINSCH'S, MGD STEWARTS ONE INC. d/b/a STEWART'S RESTAURANT BAY RIDGE BROOKLYN, MICHAEL MOUDATSOS, ELIAS MOUDATSOS, and MATTEO GUARINO, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Francisco Merino and Leonel Amigon (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.       Plaintiffs are former line cooks and dishwashers at Defendants' restaurant located in Bay Ridge, Brooklyn, New York.  For their work, throughout the relevant time period, Plaintiffs were not paid overtime premiums for hours worked over forty (40) in a given workweek. In addition, for several years of the relevant time period, Plaintiff Merino was not paid the legally required minimum wage for all hours worked.

2.       Plaintiffs bring this action to recover the unpaid minimum wage and unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, and failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.       Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the six (6)-year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to

the claims occurred in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.     Plaintiff Francisco Merino ("Merino") was, at all relevant times, an adult individual residing in Kings County, New York.

8.     Plaintiff Leonel Amigon ("Amigon") was, at all relevant times, an adult individual residing in Kings County, New York.

9.     Throughout the relevant time period, Plaintiffs performed work for Defendants at "Stewart's Restaurant Bay Ridge Brooklyn" formerly known as "Mike's Hinsch's", located at 8518 5th Avenue, Bay Ridge, Brooklyn, New York 11209.

10.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

11.     Mike & Cathy's Sons, Inc. d/b/a "Mike's Hinsch's", is an active New York corporation with its principal place of business at 8518 5th Avenue, Bay Ridge, Brooklyn, New York 11209.

12.     According to the New York State Department of State, Division of Corporations, Mike & Cathy's Sons, Inc. was registered on March 5, 2013.

13.     Although Mike & Cathy's Sons, Inc. remains active, upon information and belief, the Individual Defendants permanently closed the legal operation of "Mike's Hinsch's" restaurant, in or around the beginning of 2017.

14.     MGD Stewarts One Inc. d/b/a "Stewart's Restaurant Bay Ridge Brooklyn" is an active New York corporation with its principal place of business at 8518 5th Avenue, Bay Ridge, Brooklyn, New York 11209.

15.     According to the New York State Department of State, Division of Corporations, MGD Stewarts One Inc., was registered on February 9, 2017.

16.     Mike & Cathy's Sons Inc. and MGD Stewart's One Inc., are hereinafter referred to collectively as the "Corporate Defendants".

17.     The Corporate Defendants' operations are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs.

18.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies.

19.     Upon information and belief, Defendant Michael Moudatsos ("M. Moudatsos") is an owner and operator of the Corporate Defendants who set the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

20.     Upon information and belief, Defendant Elias Moudatsos ("E. Moudatsos") is an owner and operator of the Corporate Defendants who set the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

21.     Upon information and belief, Defendant Matteo R. Guarino ("Guarino" and together with M. Moudatsos and E. Moudatsos, the "Individual Defendants" and, collectively with

the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who set the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

22.     The Individual Defendants maintained operational control over the Corporate Defendants and jointly managed Stewart's Restaurant in Brooklyn, New York by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

23.     The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

24.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

25.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

26.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

27.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were

employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

28.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since June 26, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Stewart's Restaurant, located at 8518 5th Avenue, Brooklyn, New York 11209 (the "Collective Action Members").

30.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay the legally required minimum wage for all hours worked and pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally required minimum wage for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

31.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

32.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the

following class:

> All persons employed by Defendants at any time since June 26, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Mike's Hinsch's and/or Stewart's Restaurant, located at 8518 5th Avenue, Brooklyn, New York 11209 (the "Class Members").

33.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

34.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

35.    Upon information and belief, there are well in excess of forty (40) Class Members.

36.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

> a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;
>
> b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;
>
> c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members at least minimum wage for all hours worked each workweek;
>
> d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.   whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

f.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

37.    <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

38.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There

are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

39.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

40.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

41.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

42.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurants

43.     Upon information and belief, from in or around 2013 through in or around November 2015, Mike & Cathy's Sons, Inc. operated the restaurant located at 8515 5th Avenue, Brooklyn, New York 11209 as "Mike's Hinsch's" restaurant. During this time period, the restaurant was open 24 hours a day, 7 days per week.

44.     Upon information and belief, in or around November 2015, Defendants purchased a franchise of "Stewart's Restaurant" and changed the name of Mike's Hinsch's to Stewarts. Stewart's was originally open 24 hours a day, 7 days per week, but since in or around 2018, the

restaurant has been gradually reducing its hours of operation to its current hours: seven (7) days per week, from approximately 7:00 am to approximately 10:00 pm during weekdays and from approximately 7:00 am to approximately 12:00 am, during weekends.

45.    Upon information and belief, the Individual Defendants have been in the hospitality and food service industry for more than two (2) decades.

46.    Upon information and belief, Individual Defendants M. Moudatsos and E. Moudatsos, in collaboration with other family members, have been in the food service industry, mostly in the Staten Island area of New York, where they open and closed several restaurants, diners, and cafes over the last fifteen (15) or more years.

47.    Upon information and belief, in addition to Stewart's Restaurant f/k/a Mike's Hinsch's, during the relevant time period, Defendant M. Moudatsos owned and operated at least five (5) other restaurants/diners in the New York City area.

48.    Upon information and belief, during the relevant time period, in addition to Stewart's Restaurant, Defendant Guarino has owned and operated several restaurants in the New York City area.

49.    According to an article published in the Daily News on March 11, 2013: "…*Bay Ridge luncheonette Hinsch's . . . has been rescued from closing by Staten Island Greek diner owner Mike Moudatsos. Previous owners lost money at the 64-year-old neighborhood icon, but Moudatsos thinks his family can make a go of it by renovating, adding delivery service and beefing up the menu with customer-pleasing specials. . . Moudatsos, who is keeping iconic neon signs with the name "Hinch" outside the 108-seat eatery, is adding Greek diner faves like gyros and spinach pie to the menu.  His son Lee, who is managing the eatery, said cheesecake he introduced after his*

10

*arrival last week is selling well. Either Lee or his dad plans to be onsite every day to keep an eye on food quality and service."* (https://www.nydailynews.com/new-york/brooklyn/last-minute-reprieve-hinsch-greek-diner-owner-takes-iconic-bay-ridge-luncheonette-article).

50.    An article published by BrooklynPaper.com on July 17, 2013, confirmed that Defendants M. Moudatsos and E. Moudatsos purchased the restaurant in 2013 from the prior long-term owners: *"...Moudatsos — who owns a chain of souvlaki joints bearing his name in Staten Island — announced from the outset that he intended to tweak the ice cream parlor's moniker to 'Mike's Hinsch's.' But he promised to keep the essence of the eatery the same — despite his having radically transformed a throwback A & W carhop on the Rock. 'We're going to try to keep the place like it is, we're not going to go crazy,' the Greek diner mogul said earlier this year. 'The place has been here 60-plus years, and people like the place, the neighborhood wants it to stay the way it is'."* (https://www.brooklynpaper.com/at-hinchs-the-signs-they-are-changing/).

51.    Additional information was published in the Brooklyn Eagle on November 5, 2015, regarding the change of name from "Mike's Hinsch's" to "Stewart's Restaurant": *"...Hinsch's, which opened in the 1940s but fell on hard times in recent years, was set to close in 2013 when a new owner, Mike Moudatsos, whose family owns several Staten Island diners, bought the ice cream parlor-restaurant. Moudatsos added the name Mike to the Hinsch's name creating Mike's Hinsch's Diner. But now, for the second time in less than three years, the restaurant's name will change again. Stewart's Bay Ridge already has a website up and running to handle online orders."* (https://brooklyneagle.com/articles/2015/11/05/hinchs-is-now-called-stewarts/).

52.    Upon information and belief, in or around February 2017, with the incorporation of MGD Stewarts One Inc., Defendant Guarino became a part-owner of "Stewart's Restaurant" and

11

became involved in the operations of the restaurant, including overseeing the work of Defendants' employees, including Plaintiffs.

53.     Upon information and belief, since in or around 2017 to the present, Defendant Guarino has been a constant presence at Stewart's Restaurant, where he supervises, manages, and controls the operation of the restaurant.

54.     Upon information and belief, at all times relevant, the Individual Defendants have had power over payroll and personnel decisions at Mike's Hinsch's and/or Stewart's Restaurant, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

55.     **Plaintiff Francisco Merino** was employed by Defendants as a line cook from in or around March 2015 through in or around March 2020 (the "Merino Employment Period").

56.     At the beginning of the Merino Employment Period, from in or around 2015 to in or around the end of 2016, when the restaurant was open 24 hours, 7 days per week, Merino was scheduled to work the overnight shift five (5) days per week, with most Thursdays and Sundays off. During this period, Plaintiff Merino typically worked from approximately 8:00 pm to approximately 6:00 am, for a total of approximately fifty (50) hours per week.

57.     From in or around the beginning of 2017 to in or around 2018, Plaintiff Merino was scheduled to work six (6) days per week, and sometimes seven (7) days per week, with most Thursdays off.  During this period, Plaintiff Merino was scheduled to work from approximately 4:00 pm to approximately 2:00 am each day, for a total of approximately sixty (60) hours per week.

58.     In or around 2018, Defendants decided to reduce the business hours of the

12

restaurant, at which point the schedule for Plaintiff Merino changed.  From in or around 2018 to the end of the Merino Employment Period, Plaintiff Merino was scheduled to work from approximately 3:00 pm to between approximately 10:45 pm and 11:00 pm, for a total of approximately forty-six and one half (46.5) to forty-eight (48) hours per week.  If Plaintiff Merino was required to work a 7th day during the week, that shift was at least ten (10) to eleven (11) hours, in addition to his regular schedule of the week.  Plaintiff Merino was required to work seven (7) days per week for several consecutive months, when the restaurant was short staffed.

59.    During the last two (2) weeks of his employment period in March 2020, and due to the COVID-19 pandemic, Plaintiff Merino was scheduled to work three (3) days per week, five (5) hours per day.

60.    For his work, during 2015, Plaintiff Merino was paid the amount of eight dollars ($8.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  In 2016, Plaintiff Merino was paid ten dollars ($10.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  In 2017, Plaintiff Merino was paid the amount of eleven dollars ($11.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek. In 2018, Plaintiff Merino was paid twelve dollars ($12.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  Finally, from in or around 2019 to the end of the Merino Employment Period, Plaintiff Merino was paid fifteen dollars ($15.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

61.    Plaintiff Merino was not paid the legally-required minimum wage for large employers for all hours worked during the years 2015, 2017 and 2018.

62.    Throughout the Merino Employment Period, Plaintiff Merino was not paid

overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

63.    Throughout the Merino Employment Period, Plaintiff Merino was paid bi-weekly in a combination of cash and a pay stub. While working at Mike's Hinsch's, the paystub Merino received had an incorrect hourly rate and incorrect hours. While working at Stewart's Restaurant, the paystub had the correct hourly rate but an incorrect number of hours worked.  Plaintiff Merino was instructed by his manager to only record his hours through the POS system up to forty (40) hours per week. As such, Plaintiff Merino's pay stubs typically reflected an incorrect number of hours worked during the course of the week.

64.    **Plaintiff Leoncio Amigon** was employed by Defendants as a dishwasher and line cook, from in or around November 2014 through in or around March 2020 (the "Amigon Employment Period").

65.    Throughout the Amigon Employment Period, Amigon was scheduled to work six (6) days per week, and sometimes seven (7) days per week, with most Mondays off.  At the beginning of the Amigon Employment Period, when Amigon worked at "Mike's Hinsch's", Amigon typically worked the following schedule: Tuesdays, Thursdays, and Fridays, from approximately 6:00 am to approximately 3:00 pm; Saturdays, Sundays, and Wednesdays, from approximately 10:00 am to approximately 10:00 pm, for a total of approximately sixty-three (63) hours per week.

66.    From in or around 2017 to the end of the Amigon Employment Period, Amigon typically worked the following schedule: Tuesdays from approximately 6:00 am to approximately 3:30 pm, or later; Wednesdays, from approximately 10:00 am to approximately 10:30 pm, or later;

Thursdays, from approximately 4:00 pm to approximately 10:30 pm, or later; Fridays, from approximately 3:00 pm to approximately 10:30 pm, or later; Saturdays, from approximately 10:00 am to approximately 10:30 pm, or later; and Sundays, from approximately 11:00 am to approximately 10:30 pm, or later, for a total of at least sixty (60) hours per week.

67.    If Plaintiff Amigon was required by Defendants to work a 7th day during the week, which typically occurred when the restaurant was short on staff, Plaintiff Amigon would be scheduled to work shifts of approximately ten (10) to elven (11) hours, for a total of approximately seventy (70) hours per week.  In particular, Amigon was required to work seven (7) days per week for a period of approximately two (2) consecutive months during 2017 and 2018.

68.    For his work, at the beginning of the Amigon Employment Period, Plaintiff Amigon was paid eight dollars ($8.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

69.    In or around January 2015, when Plaintiff Amigon began working as a line cook at the restaurant, he was paid ten dollars ($10.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  At the end of 2015, Plaintiff Amigon received an increase in his payment and was paid eleven dollars ($11.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

70.    In 2016, Plaintiff Amigon was paid twelve dollars ($12.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  In 2017, Plaintiff Amigon was paid thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  In 2018, Plaintiff Amigon was paid fourteen dollars ($14.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

15

71.    Finally, at the end of the Amigon Employment Period, during 2019 and 2020, for his work, Plaintiff Amigon was paid fifteen dollars ($15.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

72.    During the Amigon Employment Period, Plaintiff Amigon was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

73.    Throughout the Amigon Employment Period, Plaintiff Amigon received his weekly payment in an envelope, entirely in cash, without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.

74.    Throughout their respective employment periods, although Plaintiffs typically worked a spread of more than ten (10) hours per day and/or split shifts, they did not receive spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

75.    Throughout their respective employment periods, Plaintiffs were not provided with wage notices at hiring, by February 1 of each year, or when their wage rate(s) changed, or proper wage statements with their wage payments each week.

**Defendants' Unlawful Corporate Policies**

76.    Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

77.    Plaintiffs spoke with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiff Merino the legally-required minimum wage for all hours worked was a corporate policy of Defendants which applied

to their non-management employees throughout the Class Period.

78.     Plaintiffs spoke with other employees of Defendants who were similarly paid an hourly rate for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants which applied to all non-management employees throughout the Class Period.

79.     Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs worked a spread of more than ten (10) hours and/or a split shift was a corporate policy which applied to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

80.     Defendants did not provide Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year or when their wage rate(s) changed.

81.     Throughout the Class Period and, upon information and belief, Defendants likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.

82.     Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff Merino and the Collective Action Members)**

83.     Plaintiff Merino, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

85.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiff Merino and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

87.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

89.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

90.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff Merino and the Class Members)**

91.    Plaintiff Merino, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

93.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff Merino and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

94.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

96.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
**(Brought on Behalf of Plaintiffs and the Class Members)**

97.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

99.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES
**(Brought on Behalf of Plaintiffs and the Class Members)**

100.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

102.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

103.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

105.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

23

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.     Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.     Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.     An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

m.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      June 26, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

25

### CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of MGD Stewart's One Inc., Mike & Cathy Sons, Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____

Signature

_____

Printed Name

### CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de MGD Stewart's One Inc., Mike & Cathy Sons, Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____

Firma

Francisco Merino

Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of MGD Stewart's One Inc., Mike & Cathy Sons, Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____            _____
Signature                                                               Leonel Amigon
                                                                              Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de MGD Stewart's One Inc., Mike & Cathy Sons, Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____            _____
Firma                                                                  Leonel Amigon
                                                                              Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

**Notice of Shareholder Liability for Services Rendered**
**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of MIKE & CATHY'S SONS, INC. and MGD STEWARTS ONE INC. are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and Fed. R. Civ. P. 23 class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of MIKE & CATHY'S SONS, INC. and MGD STEWARTS ONE INC., and to charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporations were terminated by plaintiffs in March 2020, within the past 180 days.

Dated: June 26, 2020

               */s/ Brent E. Pelton*
               Brent E. Pelton, Esq.

               *Attorneys for Plaintiffs and the putative*
               *FLSA Collective and Class*