# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

September 10, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Hon. Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East,
Brooklyn, New York 11201

      Re:    *Merino, et al. v. Mike & Cathy's Sons, Inc., et al*
              No. 20-cv-2850 (AMD)(MMH)

Dear Judge Henry:

      This office represents named plaintiffs Francisco Merino and Leonel Amigon and opt-in plaintiffs Jayuan Ruiz and Kathy Camacho (collectively, the "Plaintiffs"). We write jointly with counsel for Mike & Cathy's Sons, Inc., MGD Stewarts One Inc., Michael Moudatsos, Elias Moudatsos and Matteo Gaurino[1] (collectively, the "Participating Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's August 19, 2021 Order. Counsel for the parties respectfully submit that the Settlement Agreement[2] (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

### I.    Procedural History and Plaintiffs' Allegations

      Named Plaintiffs Merino and Amigon commenced this action by filing the Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on June 26, 2020. (Dkt. No. 1). Defendants Mike & Cathy's Sons, Inc., Elias Moudatsos and Michael Moudatsos (the "Moudatsos Defendants") filed an Answer on September 18, 2020, denying all material allegations. (Dkt. No. 10). Defendants Matteo Guarino and MGD Stewarts One, Inc. (the "Guarino Defendants") appeared at the initial conference held on December 17, 2020[3] and filed their Answer on December 21, 2020, denying all material allegations. (Dkt. No. 16). Plaintiffs filed an Amended

---

[1] Stewart's Bay Ridge Corp. has not filed an Answer or otherwise appeared in this Action. As set forth in the Settlement Agreement, Plaintiffs have agreed to dismiss with prejudice Stewart's Bay Ridge Corp. (Pelton Aff., Ex. A ¶ 4).
[2] At the time of this filing, Plaintiffs are still waiting on Defendants' signatures on the Settlement Agreement, which Defendants expect to have within the week. The parties will file a fully-executed Settlement Agreement upon receipt of Defendants' signatures.
[3] The initial conference and subsequent proceedings were held before Magistrate Judge Levy until July 27, 2021, at which time this matter was re-assigned to Magistrate Judge Henry. (Dkt. Entry dated July 27, 2021).

Hon. Marcia M. Henry
FLSA Settlement Fairness Letter
Page **2** of **7**

Complaint March 18, 2021, primarily adding as a defendant Stewart's Bay Ridge Corp. (Dkt. No. 20).

At the December 17, 2020 initial conference, the Court approved a case management order setting deadlines for discovery. (Minute Entry dated Dec. 17, 2020). During a status conference held on June 17, 2021, the Court referred this matter to mediation and ordered the parties to exchange outstanding records, written discovery responses and damages calculations. (Minute Entry dated June 17, 2021). In accordance with the Court's orders, Plaintiffs produced documents in their possession; specifically certain paystubs, W-2 tax forms and text messages; written discovery responses; and damages calculations. (Pelton Aff. ¶ 8). The Moudatsos Defendants produced written discovery responses and corporate documents pertaining to the sale of the Restaurant. (*Id.*). The Guarino Defendants produced written discovery responses, certain corporate documents relating to the sale of the Restaurant, and employee records dating from approximately March 2017 including a list of employees with contact information, W-2 forms, "Payroll Summary" records, paystubs, and "Employee Summary" records. (*Id.*).

On January 22, 2021, the Court granted the parties' consent Motion for Conditional Certification of an FLSA Collective (Dkt. Nos. 17, 18; Order of the Court dated Jan. 22, 2021). Plaintiffs sent notice to similarly situated employees on February 4, 2021. (Pelton Aff. ¶ 9). During the opt-in period, plaintiffs Ruiz and Camacho joined the Action by filing Consent to Become a Party Plaintiff forms. (Dkt. Nos. 22, 23).

A mediation was held on August 4, 2021 before James A. Brown, Esq. (Pelton Aff. ¶ 10). The Parties reached a settlement in principle at that time. (*Id.*). Over the next several weeks, the Parties finalized and drafted the Settlement Agreement. (*Id.*). As set forth in the Settlement Agreement, the Agreement, as well as the mediation proceedings, were translated into Spanish for the named Plaintiffs[4] by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**. (*Id.* ¶ 11).

## II.    The Settlement Accounts for Litigation Risk

During the relevant time period, Defendants have owned, operated and managed a restaurant located at 8518 5th Avenue in Brooklyn, New York (the "Restaurant"). From in or around 2013 through in or around November 2015, the Restaurant was known as "Mike's Hinsch's Restaurant" and was owned, operated and managed by the Moudatsos Defendants. In or around November 2015, the Restaurant was converted from Mike's Hinsch's Restaurant to "Stewart's Restaurant – Bay Ridge" and operated as a franchise of Stewart's Restaurant. In March 2017, the Restaurant was sold to the Guarino Defendants, who have owned, operated and managed the Restaurant since that time.

Plaintiffs worked as front of the house and back of the house employees at the Restaurant. Plaintiffs Merino and Amigon worked for Defendants for several years beginning prior to the sale

---

[4] Plaintiffs Ruiz and Camacho speak and read English, such that no translation for them was needed.

Hon. Marcia M. Henry
FLSA Settlement Fairness Letter
Page **3** of **7**

of the Restaurant to Defendants Guarino and MGD Stewarts One; Plaintiffs Ruiz and Camacho worked for Defendants for shorter periods of time after the sale in March 2017.

Plaintiffs allege that they experienced several unlawful payment practices, depending upon whether they were paid on or off the books. Plaintiffs each allege that they did not receive overtime premiums when they worked in excess of forty (40) hours per week, and several Plaintiffs allege that they were paid less than minimum wage for at least a portion of their employment. Plaintiffs allege that, when they received paystubs, these documents showed inaccurate calculations of hours worked and wages paid, in violation of NYLL § 195(3) due to unpaid hours, off-the-books payments, and Defendants' policy of paying lower rates than appeared on the paystubs, which was explained to several Plaintiffs throughout the relevant time period. Finally, Plaintiffs allege that Defendants failed to provide them with wage notices that fulfilled the requirements of NYLL § 195(1)(a).

Throughout the litigation, the Parties have disputed issues of fact, including the liability of the various Defendants for unpaid wages throughout the relevant time period and the accuracy of the time and wage records produced by the Participating Defendants. The Participating Defendants maintain that their time and pay records are accurate and demonstrate that Plaintiffs were paid correctly. Plaintiffs allege that the records produced are inaccurate and contradictory, show pay rates that are not credible, and do not reflect the manner in which they were actually paid. Plaintiffs further allege that Defendants are not eligible to take the tip credit in calculating wages for the front of the house employees and used the incorrect statutory minimum wage for a portion of the relevant time period. Defendants strongly deny Plaintiffs allegations and maintain that Plaintiffs were at all times paid the proper minimum wage and overtime premium rates for their work.

While Plaintiffs believe that a factfinder would credit their testimony over Defendants, Plaintiffs recognize that existing time and pay records could potentially limit the amount of damages they could recover at trial, particularly on their unpaid wage and wage statement claims, if a factfinder credited the Participating Defendants' testimony and records in their entirety.

In preparation for the mediation, Plaintiffs revised their initial damages analysis, using the Participating Defendants' records to the extent that they show some accurate clock-in and clock-out times and wages paid by check, and relying upon their best recollections of hours worked and wages paid, particularly cash wages, where appropriate. Plaintiffs calculated a total of $186,412.85 in damages, including $11,790.29 in unpaid minimum wages, $44,082.27 in unpaid overtime premiums, $7,469.93 in unpaid spread-of-hours premiums (for a total of $63,342.48 in "actual" unpaid wages), $37,925.00 in wage statement and notice damages, $63,342.48 in liquidated damages, and $21,566.63 in prejudgment interest as of July 20, 2021, the date of Plaintiffs' mediation statement.

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they would receive much lower damages, or nothing at all on their claims. As mentioned above, the Parties have disputes as to the facts and merits of Plaintiffs' claims, Defendants' liability, and the accuracy of Defendants' records.

www.PeltonGraham.com

Hon. Marcia M. Henry
FLSA Settlement Fairness Letter
Page **4** of **7**

Accordingly, Plaintiffs prefers to settle now for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $85,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial. Here, Plaintiffs' recovery exceeds the maximum calculated "actual" unpaid wage damages.

### III.     Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $85,000.00 (the "Settlement Amount") over a total of three (3) installment payments from both the Moudatsos Defendants and the Guarino Defendants in equal amounts (i.e., $42,500.00 from the Moudatsos Defendants and $42,500.00 from the Guarino Defendants). Of the Settlement Amount, $29,228.30 is payable to Plaintiffs' counsel (consisting of $1,342.45 in expense reimbursements and $27,885.85 in attorneys' fees). The remaining $55,771.70 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of September 10, 2021, Plaintiffs' counsel has spent more than 226 hours in prosecuting and settling this matter, resulting in a lodestar of $54,560.42. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $1,342.45 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $27,885.85) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is significantly lower than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates).

Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V.     The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employers. To the contrary, the settlement was the result of vigorous arm's-length negotiations with the aid of an experienced employment law mediator, as well as an exchange of damages, discovery and documents. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including the complex liability situation among the Defendants as a result of the sale of the Restaurant, wage and hour records produced by the Guarino Defendants and disputed merits issues. Due to several disputed issues of fact, the parties would likely need to engage in discovery including depositions, as well as motion practice including class certification and summary judgment, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*     *     *     *     *

      As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

      We appreciate Your Honor's attention to this matter. Please contact the undersigned should you have any questions regarding this submission.

      Respectfully submitted,

      */s/ Brent E. Pelton*

      Brent E. Pelton, Esq. of
      PELTON GRAHAM LLC

Enclosure

cc:    All counsel (via ECF)